**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Edward "Sully" Danks Sr, and | ) | |
| Georgianna Danks, as land owners | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **COURT'S OCTOBER 5, 2021 ORDER** |
| Plaintiffs, | ) | **GRANTING IN PART AND DENYING** |
| | ) | **IN PART DEFENDANTS' MOTION** |
| vs. | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Slawson Exploration Company, Inc., and | ) | Case No. 1:18-cv-186 |
| White Butte Oil Operations, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

## I.   **BACKGROUND**

In this case, plaintiffs are attempting to seek damages in tort (trespass and nuisance) for (1) the oil that was released upon their property from the operation of one of defendants' wells, and (2) the entry by defendants and/or their agents onto their land to remove vegetation and soil impacted by the release of the oil, allegedly without plaintiffs' knowledge and consent.  Plaintiffs are Native Americans residing on the Fort Berthold Indian Reservation.  The property in question is allotted land owned by the United States and held in trust for the benefit of plaintiffs, who are the allotment owners.

Defendants have acknowledged that the well in question is owned and operated by defendant White Butte Oil Operations, LLC ("White Butte").  Defendants deny any involvement by Slawson Exploration Co. Inc., which is the apparent owner of White Butte.

On August 9, 2021, the court entered an order that required plaintiffs to show cause on or before August 25, 2021, for why this case should not be dismissed with prejudice for failure to prosecute.  (Doc. No. 42).  The court also gave the parties an opportunity to raise objections to the

1

court's resolution of the jurisdictional issues then pending since neither party had at that point made the precise argument for why the court believes it has at least federal question jurisdiction.  In the court's August 9, 2021 order, the court recited in detail the unusual and tortured background of this case and why the court took the actions it did.  That discussion will not be repeated in full here.

When the court issued its show cause order, there were pending plaintiffs' motion to dismiss for lack of jurisdiction based on an administrative action they had recently filed as well as defendants' motion for summary judgment for dismissal filed shortly after plaintiffs' motion.   In their summary judgment motion, defendants also sought dismissal for lack of jurisdiction, albeit for reasons different from that claimed by plaintiffs.  In the alternative, defendants also requested dismissal on alternative grounds.  Those were that the only record evidence establishes that plaintiffs suffered no damages, plaintiffs are otherwise foreclosed from presenting evidence of damages because of their discovery failures, and, as consequence of both of these, dismissal is required based on the contention that damages are essential element of plaintiffs' claims.  The discovery failures that defendants referenced were plaintiffs' failure to respond to any of defendants' written discovery (interrogatories, document requests, and requests for admissions), including a request for admission that plaintiffs had suffered no damages.  No mention was made of whether or not plaintiffs had made their Fed. R. Civ. P. Rule 26(a)(1) disclosures.

Also, when the court issued its order to show cause, plaintiffs had not responded to the alternative grounds urged by defendants for summary judgment and responded only that the court lacked jurisdiction to consider defendants' motion for reasons set forth in their motion to dismiss.  Because plaintiffs had not done much since issue was joined and the possibility they were putting all of their chips on their motion to dismiss for lack of jurisdiction (which appeared to be

2

problematic), the court issued its order to show cause for why the case should not be dismissed for lack of prosecution.

Plaintiffs submitted a response to the order to show cause the import of which is that they want the case to proceed.  Also, in substance, it serves as a belated response to the alternative grounds set forth in defendants' motion for summary judgment.  Plaintiffs claim in their response that they suffered damages upwards of $75,000 but that they cannot calculate an exact amount and are leaving it up to the jury to determine an appropriate award.  They also state they would be seeking punitive damages.

In support, plaintiffs tendered affidavits from two of their children:  Edward Danks, Jr. and Marty Danks.  In the affidavits, the two  Danks' sons state they witnessed the aftermath of the oil release soon after it occurred.  They claim the release of oil and other contaminants was much more than the approximately three barrels claimed by defendants and that some of the pollutant flowed into the creek that plaintiffs use for watering cattle. They also profess to have observed defendants remove truckloads of top soil and dirt from the impacted area, which was off White Butte's drill site and, from all appearances, its easement area.  In addition, they state that, as far as they know, defendants had not informed the Bureau of Indian Affairs ("BIA") (which is charged with administering the allotted land in question) or their parents (as the allotment owners) prior to engaging in the remediation work and suggested this was to cover up the extent and amount of the oil release.  Finally, plaintiffs also suggested in their response (but unsupported by any affidavit testimony) that they suffered an unspecified amount of damages for having to remove their cattle from the impacted area but did not provide any detail that would provide a basis for calculating damages.

3

In addition to this response, plaintiffs also made a belated response to the request for admission in which they were asked to admit they suffered no damages. The response, which was initially filed with the court but then sequestered by the clerk (Doc. No. 44), was that they would not admit they had suffered no damages.

The court held a hearing on its order to show cause and the pending motion for summary judgment on September 22, 2021. In order to assess defendants' claims of prejudice, the court inquired about what had been disclosed by the parties in their respective Rule 26(a)(1) disclosures since that had not mentioned in defendants' motion nor in plaintiffs' response. It turns out that plaintiffs had never made their Rule 26(a)(1) disclosures, contrary to the requirements of Rule 26(a)(1), while defendants had made their disclosures.

Following the hearing, plaintiffs for the first time made a Rule 26(a)(1) disclosure identifying four persons with knowledge and who are likely to be witnesses at trial. In addition to the two siblings identified above, plaintiffs state they want to subpoena two witnesses from the BIA, presumably to testify about defendants' alleged failure to timely inform the BIA about the oil release and obtain permission in advance for the remediation effort. Also, following the hearing, defendants filed a supplemental Rule 26(a)(1) disclosure as well as two documents as part of a supplemental response to the issues raised by the order to show cause.

Finally, because of the upcoming trial dates of October 28-29, 2021, the court issued an order stating it was granting defendants' motion for summary judgment to the extent it was prohibiting plaintiffs from recovering any actual or punitive damages, but was not dismissing the case completely. (Doc. No. 55). The court advised it would be filing a memorandum explaining the court's rulings. This is that memorandum.

4

II.   **DISCUSSION**

A.   **Whether the case should be dismissed pursuant to Rule 41(b)**

1.   **Governing law**

Fed. R. Civ. P. 41(b) states in relevant part:

> **(b) Involuntary Dismissal; Effect.** If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.

At least in the Eighth Circuit, dismissal for failure to prosecute or comply with court procedures and rules pursuant to Fed. R. Civ. P. 41(b) is an " extreme sanction" and one that "should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay[ ]"—notwithstanding the breadth of the Rule's language.  Hunt v. City of Minneapolis, Minn., 203 F.3d 524, 527 (8th Cir. 2000) ("Hunt").  Also, as this court observed in its prior order, the Eighth Circuit has recommended that courts warn a litigant that he or she is "skating on the thin ice of dismissal" prior to dismissing on this ground—even when it may not be absolutely required.  Id.. (internal quotation marks omitted).  This was the path the court chose for the reasons articulated in the court's prior order.

The Eighth Circuit has further instructed that, before employing the extreme sanction of dismissal and depriving a party of his or her day in court, less-drastic sanctions must be considered even though the court is not obligated to adopt a less-drastic sanction.  Id. at 528.   In considering whether less-drastic sanctions may be more appropriate, an important consideration is the extent to which the opposing party would be prejudiced as a result.  Also, a consideration is the effectiveness of a less-drastic sanction or lack of it.  See id.; First General Resources Co. v. Elton Leather Corp., 958 F.2d 204, 206–07 (8th Cir. 1992).

Finally, dismissal under Rule 41(b) is generally not an appropriate sanction for discovery failures, except, perhaps, in extreme cases.  This is because of the more specific procedures and remedies set forth in Fed. R. Civ. P 37.  <u>See</u>, <u>e.g.</u>, <u>Societe Internationale Pour Participations Industrielles Et Commerciales, S.A.</u>, 357 U.S. 197 (1958); <u>Sentis Group, Inc. v. Shell Oil Co.</u>, 559 F.3d 888, 898–900 (8th Cir. 2009).

### 2.    The court's decision not to dismiss on Rule 41(b) grounds

Defendants contend that, notwithstanding plaintiffs' response to the court's order to show cause, dismissal pursuant to Rule 41(b) on grounds of failure to prosecute and comply with the court's orders and rules is appropriate.  Defendants point to plaintiffs' failure to respond to their (defendants') discovery requests as well as what they characterize more broadly as plaintiffs' pattern of failing to timely prosecute this action and comply with court orders and rules.

The court declines to dismiss the case on Rule 41(b) grounds for the following reasons:

•    As set forth above, the Eighth Circuit has held that, notwithstanding the breadth of the language of Rule 41(b), the extreme sanction of dismissal should be reserved for those cases where there is a "willful" violation of a court order(s) or where the litigant has exhibited a pattern of intentional delay.  In this case, the only order that plaintiffs arguably did not comply with was the court's progression order requiring the parties to make their Rule 26(a)(1) disclosures by the date specified.  However, this order is discovery/schedule related and Rule 37 provides more specific sanctions for failure to make Rule 26(a)(1) disclosures.  Further, from all appearances, the

failure to make the disclosures was one of neglect as opposed to willfulness.[1]

• The court also does not believe plaintiffs have engaged in a "pattern" of intentional delay. Defendants have asserted in earlier filings that plaintiffs' motion to dismiss on grounds of lack of jurisdiction on the eve of the deadline for filing dispositive motions was an eleventh-hour attempt to avoid a judgment on the merits. The court has also been skeptical about the timing. Nevertheless, given the complexity of the jurisdictional issues and the defenses asserted and not withdrawn by defendants, the court is not prepared to conclude plaintiffs' motion was frivolous or completely out-of-order.[2] Further, at the same time plaintiffs made theimotion, defendants were also

---

[1] Defendants contend that, with plaintiffs' failures to make their Rule 26(a)(1) disclosures and respond to defendants' written discovery, this case is indistinguishable from Alau v. Morse, 2018 WL 10231432, at *1 (D.N.D. Jan. 29, 2018) where the court dismissed that action on Rule 41(b) grounds. (Doc. No. 51). Not so. The defendant in Alau had filed a motion to compel and the court issued an order to the plaintiff to make the Rule 26(a)(1) disclosures and respond to the written discovery by a date certain. When plaintiff failed to obey that court order, the court entertained and ultimately granted a motion to dismiss for failure to prosecute. In this case, defendants did not move to compel and no explicit court order directing a response was made and willfully violated by plaintiffs.

[2] Plaintiffs alleged from the very beginning that the court had federal question jurisdiction as well as diversity jurisdiction. Ultimately, after much wrangling over the question of jurisdiction during the course of several motions, the court concluded it has at least federal question jurisdiction based upon plaintiff allottees having federal common law claims for the torts of trespass and nuisance and that plaintiffs can pursue these claims without the United States, as owner and trustee for plaintiffs' allotments, being a party. Since the court reached these conclusions, the Eighth Circuit recently stated in an action by allottees for trespass upon their allotted land that it is an open question whether the allottees have a common law claim under federal law and declined to rule on the issue. Chase v. Andeavor Logistics, L.P., __ F.4th__, 2021 WL 4142413, at ** 5–8 & n.6 (8th Cir. Sept. 13, 2021). And, if allottees lack such claims, that may mean the only party that could seek relief for the claimed trespasses would be the United States as the trustee for the allottee's beneficial interests. See id. at **9–10. Finally, the Eighth Circuit concluded in Chase that it was proper in that instance to defer initially to an administrative action pending before the BIA on "primary jurisdiction" grounds before there were further proceedings in the district court. While the undersigned concluded that the circumstances presented by Chase and another similar case that was pending before this court are distinguishable, this is a complex area as made clear by the Eighth Circuit in Chase. Id. at **1, 5. It is for this reason the court does not conclude that plaintiffs' belated filing of the administrative action and its motion to dismiss for lack of jurisdiction were frivolous. Further, defendants are hard-pressed to contend otherwise given the assertion in their answer the defenses of lack of jurisdiction, failure to state a claim for relief, plaintiffs not being the real parties-in-interest, failure to join an indispensable party, and failure to exhaust administrative remedies (Doc. No. 25), none of which appear to have been withdrawn as the time of filing of plaintiffs' motion to dismiss on jurisdictional grounds based on the administrative action they had filed.

After the court set forth its reasons for why the court has federal question jurisdiction in its order to show cause,

(continued...)

claiming the case should be dismissed for lack of jurisdiction, albeit for different reasons.  While the court did cancel the originally scheduled trial to sort out what was before it, both parties contributed to that in part by their respective jurisdictional challenges.  Once the court sorted out the jurisdictional issues, it put the case back on the calendar for trial and neither party has sought an extension, much less argued that they would be entitled to one.[3]  Likewise, there has been  no delay in the trial date caused by plaintiffs' failure to initially respond to defendants' alternative grounds for summary judgment for the same reasons, which lack of response was in the context of the unusual circumstances of both parties contending the court lacked

---

[2](...continued)

defendants filed a response stating that they agreed plaintiffs have federal common law claims for which they can seek relief, essentially waiving the defenses set forth above to the extent they can be waived.  Had defendants reached this conclusion at the very beginning of the case and not repeatedly questioned the court's jurisdiction in serval filings (including most recently its motion for summary judgment before attempting to withdraw the jurisdictional objection), it is possible this case could have proceeded more quickly.

[3]  Defendants have also pointed to plaintiffs' earlier foray into tribal court and the time and costs defendants expended  in defending that action.  However, it was defendants that moved to dismiss that action rather than have the dispute adjudicated by the tribal court by contending (1) the tribal court lacked jurisdiction, and (2) that the suit was foreclosed by the forum-selection clause in the right-of-way agreement that defendants obtained from plaintiffs with the approval of the BIA for use of the surface of their allotted land for oil-drilling activity.  While defendants certainly had the right to contest tribal court jurisdiction, the court is not willing to conclude that plaintiffs wanting to seek relief in tribal court was in bad faith or harassment.  So far as the undersigned is aware,  the question of whether the tribal court might have jurisdiction over claims for tortious invasions of allotted property (at least under tribal law if there is any) is an open question along with whether the tribal court would have jurisdiction over defendants based on their consensual engagement in economic activity on the reservation.  While the tribal court did dismiss plaintiffs' earlier action on the forum-selection grounds and plaintiffs did not appeal that ruling, the tribal court's conclusion that the forum-selection clause applied was at least debatable.  While this court does not know what facts were before the tribal court, it appears from what defendants have submitted in this action that the impacted land in question is outside of the granted right-of-way thereby making it at least debatable whether the forum-selection clause applies.  In short, while the fact plaintiffs' disputes with defendants have been pending at least since the commencement of the tribal court is relevant to how much time plaintiffs have had to get their act at together in terms of proof of actual damages, the court does not otherwise believe it is a consideration.

jurisdiction.[4]

• In not dismissing this case on Rule 41(b) grounds, the court is not countenancing plaintiffs' discovery failures. Rather, in this case, the discovery failures are more properly addressed within the framework of Rule 37. Further, apart from that, any consideration of the discovery failures would have to balanced against defendants' decision not to seek relief by way of motion made within the time set by the court in its progression order for making such motions as well as the fact that dismissal would completely deprive plaintiffs of their day in court.

• Even if the court could properly dismiss this case pursuant to Rule 41(b), the court concludes after balancing all of the considerations (including those set forth above) that the less-drastic (but still severe) sanctions imposed pursuant to Rule 37 as set forth below are more appropriate for the unusual circumstances of this case.

## B.   **Defendants' motion for summary judgment**

### 1.   **Introduction and ultimate conclusions**

Defendants seek dismissal on the grounds that: (1) there is a lack of evidence of damages because (a) the only record evidence is that plaintiffs suffered no damage, and (b) plaintiffs' discovery failures foreclose them from offering any evidence of damages; and (2) dismissal is required in the absence of evidence of damages because, according to defendants, damages are an essential element of plaintiffs' claims. Separate from this argument, defendants may be claiming that dismissal is an appropriate sanction under Fed. R. Civ. P. 37 for plaintiffs' discovery failures.

---

[4] It is because of this and lack of prejudice to defendants that the court does not exercise its authority under the court's local rules to deem plaintiffs' partial failure to respond an admission that the remainder is well-taken. However, plaintiffs' belated response is not sufficient to save the day for their claims of actual and punitive damages as discussed in what follows.

With respect to this argument, whether or not damages are an essential element of plaintiffs' claims is irrelevant.

The court's conclusions are the following:

- The court disagrees with defendants' contention there is no record evidence of damages.  The evidence that defendants state in their motion is uncontested supports the conclusion that some damage was suffered.

- Dismissal under Rule 37 is not an appropriate sanction in this instance.  But, even if dismissal is an available sanction under Rule 37, the court declines to impose it because other lesser sanctions are more appropriate.

- The court will not permit plaintiffs to recover punitive damages.  Even if defendants' conduct would support an award of punitive damages (which is questionable), the sanction of not allowing plaintiffs to recover punitive damages is appropriate because of plaintiffs' failure to comply with court-ordered deadlines.

- The court will not permit plaintiffs to recover actual damages for two reasons.  First, plaintiffs' discovery failures support exclusion of evidence offered for the purpose of proving actual damages. Second, even if the evidence belatedly tendered was permitted,  it is insufficient to support an award of actual damages with sufficient certainty.

- While the court will not permit plaintiffs to recover actual or punitive damages, the court will not dismiss the case in its entirety.  The court disagrees with defendants' argument that damages are an essential element of plaintiffs' claims—all or in part. If liability is proved, plaintiffs may be entitled to the recovery of nominal damages.

What follows are the reasons for the above conclusions.

**2.    Defendants' argument that there is no "record evidence" plaintiffs suffered any damages**

Defendants contend that the only "record evidence" relevant to the issue of damages is that contained in the expert report they have repeatedly tendered in this case.  Defendants first submitted the report on November 19, 2019, in support of a motion for a more definite statement.  In that motion, defendants urged the court to rely upon it as part of their argument that plaintiffs would be unable to demonstrate that they had suffered damages in excess of the jurisdictional threshold for diversity jurisdiction.  (Doc. No. 20).  Defendants have now submitted the same expert report in support of their motion for summary judgment, both as originally filed and in their attempt to limit the motion to the question of damages only.  (Doc. Nos. 35 & 37).  Defendants's expert report states in relevant part the following:

> The release occurred on September 20, 2016 during completions operations. Approximately three (3) barrels of fluids consisting of petroleum hydrocarbons and water sprayed from the backside of the Panzer 2-20MLH well, resulting in an area of impact approximately 50 feet offsite across an adjacent field (Figure 2). White Butte responded to the release by mowing the impacted off-site vegetation, collecting it, and disposing of it offsite.  the release by mowing the impacted off-site vegetation, collecting it, and disposing of it offsite.

(Doc. No. 20-1).  The report also suggests that, in addition to vegetation having been removed, that some soil was removed as well.  Id.  ("Soil sampling was completed to identify the presence or absence of residual soil impact following removal of affected vegetation and soil.").

In addition to tendering a copy of the expert report, defendants state as part of their "Statement of Uncontested Material Facts" that the following facts have been established and are uncontested:

> 16.    Defendants nevertheless timely designated their expert report, in which a registered professional geologist examined the site contemporaneously with the spill, and observed that the release of "[a]pproximately three (3) barrels of fluids consisting of

11

petroleum hydrocarbons and water sprayed from the backside of the Panzer 2-20MLH well, resulting in an area of impact approximately 50 feet offsite across an adjacent field (Figure 2). [Defendants] responded to the release by mowing the impacted off-site vegetation, collecting it, and disposing of it offsite." Exhibit 3, Expert Report of John D. Peterson ("Peterson Report").

       17. Defendants' expert opines that any soils impacted by the September 20, 2016 release were removed and the small impacted area was successfully remediated. *Id.*

(Doc. No. 37, p.5).   Then, in the argument portion of their summary judgment brief, defendants go on to state:

       ***Second***, the uncontroverted evidence in the record establishes that the 2016 release resulted in no damages and was successfully remediated. Ex. 3, Peterson Report (any soils impacted by the September 20, 2016 release were removed and the small impacted area was successfully remediated).

(Doc. No. 37, p. 7).

       The problem with all of this is that the very evidence  defendants claim is established and uncontested proves there was some damage, even if small or difficult to calculate.  In other words, the undersigned does not buy defendants' argument that, because White Butte removed any property damaged by its operations, there was no damage.

       In short, putting aside what plaintiffs' tendered in their belated response to the motion for summary judgment, there is record evidence that some damage was suffered.  Hence, the court declines to dismiss on the grounds of lack of record evidence of damage having been suffered.

       **3.**     **Dismissal is not an appropriate sanction under Rule 37 for plaintiffs' discovery failures given the particular circumstances of this case**

       It is not clear from defendants briefing whether they are contending that plaintiffs' discovery failures are themselves grounds for dismissal or are confining their argument to dismissal being appropriate because plaintiffs will be unable to offer proof of damages because of their discovery failures and that damages are purportedly an essential element of their claims.  The court here will

address the former and leave the latter for separate discussion.

### a. Plaintiffs' lack of response to defendants' interrogatories and document requests

Rule 37(d) authorizes the use as sanctions for failure to respond to interrogatories and requests for production of documents "any of the orders in Rule 37(b)(2)A(i)-(vi)" of which (v) provides for "dismissing the action or proceeding in whole or in part . . . ."[5]  However Rule 37(d) requires as a condition precedent, a prior motion seeking sanctions, which must be accompanied by a certification that "the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action."  In other words, the policy of Rule 37 appears to be that before a party can seek sanctions for failure to respond to interrogatories and document requests (including the sanction of dismissal), the party must first raise its hand and before that attempt to work out the failures with the other party.

In this case, the court set a deadline for filing discovery motions and defendants did not attempt to file such a motion within the small amount of time they had left themselves, if any. Further, even if the deadline for filing discovery motions was ignored and the present motion for summary judgment treated as the required motion for sanctions, there is absent the certification required by Rule 37(d)(1)(B).

Given the foregoing, the court concludes that dismissal is not an appropriate sanction for plaintiffs' lack of response to defendants' interrogatories and requests for production of documents.

---

[5]  The Eighth Circuit has held  that Rule 37(d) applies when the failure to respond to the written discovery in question is total as opposed to more limited failures that are the subject of subpart (b).  Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 993 (8th Cir. 1975).  In Fox, the Eighth Circuit upheld the dismissal of plaintiffs' complaint based on the failure to respond to defendant's discovery.  However, in Fox,  the defendant had filed a specific motion seeking that relief.  Further, this case was decided before Rule 37 was amended to include the requirement for consultation with the opposing party before a motion seeking that relief is filed.

But, even if dismissal could be employed as a sanction, the court would choose in its discretion not to employ it, favoring the other actions taken as discussed below.

### b. Plaintiffs' initial lack of response to defendants' requests for admissions

Rule 37 does not provide a sanction for failure to respond to a request for admission. Rather, this is reserved for Rule 36, which provides in subsection (a)(3) that failure to respond results in the matter being deemed admitted. The only penalty provided in Rule 37 relative to requests for admissions is if a party refuses to admit a matter and the matter is later proved. In that instance, Rule 37(c)(2) authorizes the court in certain instances to award attorney fees.

In short, plaintiffs' lack of a response to defendants' requests for admissions by itself is not grounds for dismissing the action.

### c. Plaintiffs' failure to timely make their Rule 26(a)(1) disclosures

Rule 37(c) addresses the consequences of a party's failure to make its Rule 26(a)(1) disclosures. The default sanction is the exclusion of witnesses or other information that should have disclosed. The Rule does permit the imposition of other sanctions, including any "of the orders listed in Rule 37(b)(2)(A)(i)–(vi)," of which (v) provides for dismissal, as noted earlier. However, a condition precedent to the use of sanctions other than the default is a "motion" and giving the party failing to make the required disclosures an "opportunity to be heard."

Here, defendants did not file such a motion with the time period the court for making discovery motions when they otherwise could have. In fact, even in its motion for summary judgment, there is no mention by defendants of plaintiffs' failure to make their Rule 26(a)(1) disclosures. Defendants referred only to plaintiffs' failure to respond to their written discovery.

The court concludes that dismissal for failure of plaintiffs to make their initial Rule 26(a)(1)

responses is not appropriate because of defendants' failure to move to dismiss on this grounds within the time set forth in the progression order. Further, even if the court can now dismiss the action based upon the lack of disclosure, the court concludes the lesser default sanction is a more appropriate in this instance.

### 4. Plaintiffs will not be permitted to seek actual damages

#### a. The court excludes plaintiffs' actual damage evidence because of their failure to make timely make their Rule 26(a)(1) disclosures and the result of this is that plaintiffs are left with no submissible proof of actual damages

As noted above, the default sanction under Rule 37 for failing to timely make the disclosures required by Rule 26(a)(1) is the exclusion of witnesses and information that should have been disclosed. A prior motion is not required for the default sanction. However, Rule 37(a) allows a court to avoid a result that is overly severe for the particular circumstances by permitting the court to not impose the sanction of exclusion (or temper it in some fashion) if the failure to disclose was "substantially justified or is harmless."

Under Rule 26(a)(1)A)(i)–(ii), plaintiffs were obligated to disclose witnesses and documents relevant to their claims, including any damages that may be sought. In addition, plaintiffs were obligated under subpart (iii) to provide "a computation of each category of damages claimed by the disclosing party." In this case, plaintiffs did not do any of these things on a timely basis.

Only most recently have plaintiffs provided any information bearing upon the issue of damages. As outlined earlier, plaintiffs claimed in their belated response to the motion for summary judgment that they were unable to pasture their cattle for some undefined period of time—but without any affidavit support. Further, while defendants did submit affidavits from two of their sons that in part contained some information potentially relevant to damages, this was the first mention

15

of these two persons.  Finally, following the court's hearing on the order to show cause and the motion for summary judgment, plaintiffs did submit for the first time a Rule 26(a)(1) disclosure identifying the two sons and two BIA officials as possessing information.  But again, none of these persons had previously been disclosed on a timely basis.  Further, even now, plaintiffs have not in their belated Rule 26(a)(1) disclosure provided a calculation for the categories of damages they are claiming, consistent with the statements that they are unable to provide a calculation and want the jury on its own to divine an appropriate amount.

In this case, defendants can rightfully claim prejudice from plaintiffs' having not timely made their Rule 26(a)(1) disclosures.  If plaintiffs had identified on a timely basis the two witnesses they now want to primarily rely upon for proving damages, defendants would have had the opportunity to depose them, learn what they were claiming, and adjust their discovery and investigation efforts, as well as their litigation strategy, accordingly.  Further, by plaintiffs's failure to identify in a Rule 26(a)(1) disclosure loss of use of the property as a category of damages and provide a calculation, defendants were deprived of the opportunity to depose relevant witnesses and/or otherwise investigate the substance of the damages being claimed.  The same applies to any claim for compensation for the removed property if that is being sought.  Also, another thing that defendants might have done armed with knowledge about what plaintiffs might be claiming as a calculation of their damages was to employ the assistance of one or more additional experts or expand upon the evaluation made by the expert it did disclose.  As it was, with plaintiffs having made no Rule 26(a)(1) disclosures and themselves not having disclosed an expert, defendants disclosed only the report of the expert prepared following the release of the oil to evaluate the impacts, which, as the court has outlined in earlier orders has some limitations.

Based on all of these things, an appropriate sanction for plaintiffs' failure to make its Rule 26(a)(1) disclosures in this case is to exclude that which should have been the subject of timely Rule 26(a)(1) disclosures.  And, when the court does that, it is clear from plaintiffs' belated responses as well as what was discussed during the hearing that they are left with no submissible evidence of actual damages in response to the motion for summary judgment.  Further, this is without consideration of plaintiffs' lack of response to defendants' written discovery, which is more problematic as discussed later.

> **b.** **Even if the court was to permit the untimely disclosed evidence, it is apparent that it is not sufficient to prove actual damages with sufficient certainty**

The court has carefully considered the evidence most recently and untimely submitted by plaintiffs.  It is clear from (1) the vague and limited information plaintiffs have submitted, (2) their acknowledgment they are unable to offer a calculation of damages, and (3) the other acknowledgments made by plaintiffs' counsel during the hearing that plaintiffs are not in a position to offer evidence sufficient to prove actual damages with the reasonable degree of certainty required, even if the court was to permit the evidence.  See, e.g., 22 Am. Jur. 2d Damages § 720 (Aug. 2021 update) ("facts must exist which afford a basis for measuring the plaintiff's loss with reasonable certainty").  Hence, this another grounds for not permitting plaintiffs to recover actual damages.

> **c.** **The court's conclusion to not allow recovery of actual damages is for the reasons expressed above and not plaintiffs' other discovery failures that are more problematic given the particular circumstances of this case**

As outlined earlier, the sanctions available to defendants for the failure to respond to their interrogatories and document requests may be unavailable because of their own lack of action, *i.e.*, not seeking relief from the court and, before doing so, not seeking to first resolve the matter with

plaintiffs.  Further, even if sanctions could be imposed, defendants' written discovery was served

so late in the game that it likely prohibited defendants from moving to compel and, for sure, an

inability to seek follow-on discovery—at least absent the court granting relief from the progression

order.  In fact, defendants' discovery requests may technically have been untimely.[6]  Also, plaintiffs'

failure to respond to the written discovery did not alter the course of expert discovery since that had

been completed prior to defendants making their discovery requests.  And, with plaintiffs not having

disclosed an expert, their ability to recover substantial damages had likely been taken off the table

given the nature of the case.  Taking all of this into account, while defendants may have suffered

some prejudice from plaintiffs' lack of responses to the interrogatories and requests for production

of documents in terms of investigation outside of formal discovery and trial preparation, the court

---

[6] Defendants' written discovery was served on January 27, 2021, and the court-ordered dates for completing discovery and filing discovery motions was February 28, 2021.  (Doc. Nos. 28 & 35-3).  In this instance, the thirtieth day for plaintiffs' responses nominally being due under Rules 33, 34, & 36 was February 26, 2021.  Technically, however, plaintiffs' responses to the written discovery may not have been due until thirty-three days after January 27, 2021, given the additional three days provided for by Fed. R. Civ. P. 6(d) unless plaintiffs had consented in writing to electronic service by means other than the court's filing system.  See also Rule 5(b)(2)(F).  If so, the thirty-third day would have fallen on Monday March 1, 2021 thereby making  making defendants' discovery requests untimely.  That is, the requests should have been made earlier to permit discovery being completed by February 28, 2021.  That being said, there may have been some ambiguity in the court's progression order since, in addition to providing for the February 28, 2021 deadline, it also stated that  written discovery had to be made a "minimum" of thirty days prior to the deadline for completing discovery.  (Doc. No. 28).  Technically, however, the thirty-day  minium would apply only if plaintiffs had consented in writing to electronic service.  In addition, further complicating this matter is that February 28, 2021, fell on a Sunday.  That deadline, however, appears not to be extended under Rule 6 to the next business day, which, in this instance, would have been March 1. This is because the Comments to Rule 6 make clear that the provisions extending deadlines falling on a Saturday, Sunday, or legal holiday apply only to deadlines measured by a prescribed time period (such as 14 days to respond to a motion), but do not to deadlines fixed by set dates.  See *Advisory Committee Notes*, 2009 Amendments to Fed. R. Civ P. 6(a).

In this case, plaintiffs have not at any point suggested they were not obligated to respond to defendants' written discovery.  Further, even if they had been concerned about the potential lack of timeliness, they should have in this unusual instance requested relief from the court rather than treat the written discovery as inoperative and not respond. See, e.g., Retamco Operating, Inc. v. Carone, No. CV 04-2997, 2006 WL 8446359, at *2 (C.D. Cal. April 28, 2006; but see Roca Labs, Inc. v. Consumer Opinion Corp., 140 F. Supp. 3d 1311, 1316-18 (M.D. Fla. 2015) (refusing to deem admitted a matter based on the failure to respond to the request for admission because the request was not timely made and the burden was on the proponent of the request to seek relief from the court's progression order to allow the request to have been made out-of-time).

What is clearly relevant, however, in evaluating defendants' claims of prejudice is their waiting until the very last moment to make their discovery requests.  In so doing, they left themselves with little time, if any, to file a motion to compel and no time to make and complete follow-on discovery.

is skeptical as to the degree of prejudice.

This leaves, however, plaintiffs' failure to respond to the request for admission that they suffered no damages.   Under Rule 36(a)(3), a matter is deemed admitted unless it is denied, or the request for admission is properly objected to, within the time permitted by the Rule.   Rule 36(b) further provides that a matter admitted under the rule is "conclusively established" unless the court on motion permits the admission to be withdrawn or amended.

In this case, plaintiffs did serve and file with the court a belated response to the request for admission.   Although plaintiffs did not file a formal motion to withdraw the admission, the Eighth Circuit has held that the filing of a response with the court may be treated as such.   See, e.g., Quasius v. Schwan Food Co., 596 F.3d 947, 951–52 (8th Cir. 2010);   Black Hills Molding, Inc. v. Brandon Holdings, LLC, 295 F.R.D. 403, 420 (D.S.D. 2013).   And, in deciding whether to allow withdrawal of an admission, Rule 36(b) provides that the two relevant factors are: (1) whether withdrawal "would promote the presentation of the merits[;]" and (2) the court is "not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."   See id. Notably, what defendants do not have to demonstrate is excusable neglect.   See, e.g., F.D.I.C. v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994); see id..

In this case, plaintiffs claimed in virtually all of their court filings up to the time they failed to respond to the request for admission in question that they suffered damages and did so again shortly thereafter when they filed an administrative action with the BIA claim even greater damages. Further, it is not clear that defendants placed substantial reliance upon this admission in terms of their case preparation given the timing of the request, *i.e.*, at the very last minute, so as to likely foreclose a motion to compel as well as follow-on discovery (unless the court granted relief), and

after expert discovery had been completed.

In other words, while the court believes defendants have been prejudiced, the primary prejudice appears to have been plaintiffs' failure to timely make their Rule 26(a)(1) disclosures. Since the court has concluded that plaintiffs will not be allowed to claim actual damages for the two reasons set forth above, the court need not decide whether plaintiffs would be entitled to relief from their admission—at least in terms of the claim of actual damages.

### 5. The court will not permit plaintiffs to recover punitive damages

Plaintiffs suggested in their belated response to the motion for summary judgment that they would be seeking punitive damages. However, plaintiffs did not plead a request for punitive damages in their complaint and the court's progression order set forth the specific deadline of December 31, 2020, for amending the complaint to plead punitive damages. (Doc. No. 28). Had plaintiffs made clear within the required time period that they would be seeking punitive damages, the undersigned is confident defendants would have more aggressively pursued discovery with respect to both liability and damages, including deposing relevant witnesses. Hence, the court will exclude any claim of punitive damages pursuant to Fed. R. Civ. P. 16(f)(1).

### 6. The court will permit the trial to proceed on the questions of liability and the possibility of recovering a nominal damage of one dollar

Defendants contend that the inability of plaintiffs to recover actual damages requires dismissal of this action because, according to them, the suffering of actual damages is an essential element of plaintiffs' causes of action. The court has reviewed the authority cited by defendants and is not convinced.

At this point, the court has not decided upon what it should look to as being the relevant federal common law. That is, whether in this instance it should look to state law or apply general

20

common law principles.  At the end of the day, it may not make a difference. At least for claims of the intentional tort of trespass, an award of nominal damages is proper in the absence of evidence of actual damages under generally-followed common law and North Dakota law.  See, e.g., Kuntz v. Leiss, 2020 ND 253, ¶7, 952 N.W.2d 35; Restatement (Second) of Torts § 907, Comment b (1979); 75 Am. Jur. 2d Trespass § 9 (August 2021 update).

The court acknowledges there may be some uncertainty with respect to claims of nuisance, particularly if the governing law premises the finding of nuisance in a particular situation upon proof of negligence.  While the court has not made a final determination, there is substantial authority for being able to award nominal damages in a nuisance action where there has been an actual physical invasion of real property, which, indisputably, was the case here with the released oil having been cast upon plaintiffs' property.  See, e.g., Restatement (Second) of Torts § 907, Comment c and cases cited in Reporter's Notes (1979); 66 C.J.S. Nuisances § 263 (Aug. 2021 update).

Defendants contended during the hearing on the order to show cause and the motion for summary judgment that plaintiffs' discovery failures have prejudiced them in terms of defending against the imposition of liability.  Here, however, the court has declined to dismiss pursuant to Rule 41(b) and defendants' motion for summary judgment was limited to the question of damages.  That being said, the court is prepared to exclude at trial evidence proffered by the parties that should have disclosed—at least if prejudice can be shown.

Defendants further contend that allowing the trial to go forward only for the possibility of recovery of a dollar in nominal damages will be huge waste of time and resources for the parties and the court.  However, the undersigned is unimpressed by any claim of inconvenience and expense to defendants in having to defend against a claim that oil from White Butte's operation ended up on

21

plaintiffs' land, where it should not have been.  As for the court, it is here to adjudicate disagreements between parties as an alternative to the parties seeking their own "street justice."  On the other hand, plaintiffs might very conclude their point has been made and there is nothing further to be gained by going to trial.

Further, the court is not convinced the trial will be lengthy.  While neither party moved for summary judgment on the liability issues, defendants have acknowledged that White Butte's oil ended up on plaintiffs' land and in sufficient enough quantities to result in White Butte concluding it was necessary to remove impacted  vegetation and, perhaps, some soil.   Very little more than defendants' acknowledgment of these facts may be necessary to make out a prima facie case of nuisance and ultimately one that at least White Butte cannot successfully contest.[7]  Plaintiffs' claim of intentional trespass is somewhat more involved,[8] but still should not take much time to try— assuming plaintiffs will be permitted to present witnesses they have not timely disclosed, which is questionable at best.

Finally, before leaving the possibility of a recovery of nominal damages, the court  must

---

[7] Defendants have not contended that the release of oil was the result of an act of god or some third party.  Further, it seems clear that oil should not have ended up on plaintiffs' property under normal operations.  In fact, defendants have now filed  a reporting document as part of a supplemental response to the order show cause in which White Butte forthrightly acknowledges that the cause of the oil release in significant part was "Human Error" because of the failure to secure a relief line.  (Doc. No. 51-2) ("Around 5 PM on the 19th, there was release of pressure from the backside of the well while pumping stage 3, which exceeded the pop-offs relief setting of 3,401 psig.  The relief line was not secured, so the pressure overcame the pipe and with a moderate wind from the west, a plume of oil spray left the location to the west.").

[8] Plaintiffs claim they were not notified of the incident and that defendants entered upon their property to undertake the remediation effort without their permission.  It remains to be determined whether any of this true along with whether it sufficient to constitute trespass.  Defendants have submitted as a supplemental response to the order to show cause two documents that between them suggest the BIA at some point was notified of the incident causing damage along with "Clayton Danks" on the morning following the release of oil.  (Doc. Nos. 51-1 & 51-2).  Also, the document purportedly prepared by the North Dakota Department of Environmental Quality states that White Butte's remediation effort was "[b]eing done with landowner approval[,]" although it is not apparent how the author gained this information.  Further, it may very well be that permission from the United States alone would be sufficient given its ownership interest and trust responsibilities.

circle back to plaintiffs' failure to respond to the request for admission that they suffered no damages. The court declines to give effect to this admission to the extent it applies to nominal damages. First, it is not at all clear that the request for admission encompassed nominal damages recoverable when there is not sufficient evidence of actual damages. Second, the court grants relief to plaintiffs' withdrawal of their admission pursuant to the authority previously cited—at least to the extent that some damage was suffered. This is because the interests of justice do not support giving effect to the purported admission (by operation of the Rule because of the failure to respond) because plaintiffs have unequivocally admitted to facts that support the conclusion some damage was suffered and thereby clearly cannot claim prejudice. See, e.g., F.D.I.C. v. Prusia, 18 F.3d at 639–41 (refusing to give effect to an admission that was contrary to actual established facts); Glover v. Rodriguez, Civ. No. 19-304, 2021 WL 682319, at *7 (D. Minn. Jan. 1, 2021) (same and citing other cases); cf. Perez v. Miami-Dade County, 297 F.3d 1255, 1266–68 (11th Cir. 2002) (giving relief with respect to an admission when it appeared the request was made "with the wild-eyed hope that the other side will fail to answer and thereby admit an essential element of their claim" and not for the legitimate purpose of expediting the trial or relieving the requesting party from proving facts that will not be disputed at trial).

Dated this 13th day of October, 2021.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court

23